UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

---

TAMIKE HARPER-YOUNG,
3324 Rossington Blvd.
Chester, VA 23831

    Plaintiff,

    v.                                                           Civil Action No.

WILLIAM K. MARSHALL, III,
DIRECTOR, FEDERAL BUREAU OF
PRISONS,
320 1st St NW,
Washington, DC 20534
    Defendant.

    Serve:

        William K, Marshall, III
        Director, Federal Bureau of Prisons
        320 1st St NW,
        Washington, DC 20534

        Pam Bondi
        United States Attorney General
        950 Pennsylvania Ave.
        NW, Washington, DC 20530

        Edward R. Martin, Jr.
        U.S. Attorney for the District of Columbia
        601 D St NW
        Washington, DC 20004

---

## COMPLAINT

    Plaintiff, Tamike Harper-Young, by and through her undersigned counsel, for her Complaint against Defendant, Federal Bureau of Prisons, states as follows:

1

**PRELIMINARY STATEMENT**

1. Ms. Harper-Young has been employed by Defendant Federal Bureau of Prisons ("BOP") as a GS-008-06 Senior Officer since August 2016. Ms. Harper-Young has primarily worked at Federal Correctional Complex Petersburg in Petersburg, Virginia ("FCC Petersburg"). Throughout her tenure at the BOP, Ms. Harper-Young has been an exemplary employee.

2. On July 20, 2022, Ms. Harper-Young started a duty assignment as an interim Captain Secretary. Immediately, her new supervisor, Deputy Captain Reginald Wright ("Captain Wright"), began sexually harassing her. One of the first things Captain Wright did was call Ms. Harper-Young and ask what days she had off from work. Ms. Harper-Young shared she was not scheduled to work on Fridays and Saturdays, to which Captain Wright suggestively responded, "You should keep me company while working Saturdays."

3. During the same phone call, Captain Wright asked what Ms. Harper-Young was currently doing. She responded that she was going out to dinner. Captain Wright said, "Don't do anything that I wouldn't do." Ms. Harper-Young responded that she does not drink much and ended the conversation.

4. On July 28, 2022, Ms. Harper-Young, as part of her Captain's Secretary duties, was searching for missing evaluations in the captain's office. After locating the evaluations, Ms. Harper-Young turned to leave. Captain Wright called out after her and exclaimed, "Before you leave, leave your panties."

5. A few days later, on July 31, 2022, Captain Wright called Ms. Harper-Young to thank her for finding the evaluations. He then asked, "how come you didn't do what I told you to do." Ms. Harper-Young stated that she did not understand his question. Captain Wright

responded, "you didn't leave me your panties like I told you to."

6. On August 3, 2022, Captain Wright called Ms. Harper-Young and asked her why he did not see her the previous day. She responded that she was in fact present the prior day. Captain Wright then asked her to return to his office later because "I'm trying to see you anyway." She asked to "see me for what?" Captain Wright replied, "I'm trying to see you naked because that's going to help with my imagination."

7. Also on August 3, 2022, Ms. Harper-Young wrote a memorandum to FCC Petersburg Warden David Leu ("Warden Leu") detailing Captain Wright's repeated sexual comments and explaining that she did not feel comfortable working under his supervision.

8. Later that day, Ms. Harper-Young learned that BOP did not select her for two open positions she applied for, Financial Program Specialist and Regional Financial Specialist. Ms. Harper-Young's credentials qualified her for these positions, and she was in the top four candidates. Ms. Harper-Young applied to these positions in an effort to escape Captain Wright.

9. Warden Leu took no action to remove Captain Wright from Ms. Harper-Young's chain of command. Ms. Harper-Young requested paid leave or to be in a position in which she would not come into contact with Captain Wright. Human Resources denied her leave request and stated that they could not guarantee a position with no contact with Captain Wright.

10. Instead, the Agency placed her near the front of the facility, close to Captain Wright's office, making it even more difficult to avoid him.

11. Because of Captain Wright's actions and Defendant's failure to take any remedial action, Ms. Harper-Young feared going back to the workplace and did not feel safe at home. She

transferred away from FCC Petersburg in January 2023, taking a farther-away job with lower pay and worse promotional potential, and did not return until she learned that Captain Wright retired.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

13. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is a federal agency with headquarters located at 320 First St., NW Washington, DC 20534.

## PARTIES

14. Ms. Harper-Young is a current resident of Chester, Virginia.

15. During the period at issue, Ms. Harper-Young worked for Defendant BOP at FCC Petersburg located in Petersburg, Virginia 23804.

16. At all relevant times, Ms. Harper-Young was Defendant BOP's employee within the meaning and entitled to the protections of Title VII.

17. At all relevant times, Defendant BOP was Ms. Harper-Young's employer within the meaning of and subject to the requirements of Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

18. Ms. Harper-Young informally complained to the Department of Justice's EEO office on August 16, 2022.

19. On November 4, 2022, Ms. Harper-Young received a Notice of Right to File Formal Complaint.

20. Ms. Harper-Young filed her formal complaint on November 7, 2022.

21. On November 16, 2023, Ms. Harper-Young, through counsel, withdrew her administrative hearing request and asked for a Final Agency Decision ("FAD"). More than 180 days have

passed, and Defendant has not issued a Final Agency Decision.

## STATEMENT OF FACTS

### *Ms. Harper-Young is employed by Defendant and a member of a protected class.*

22. Ms. Harper-Young began working for BOP in August 2016. She worked at FCC Petersburg from August 7, 2016, to January 27, 2023.

23. Ms. Harper-Young is an African American female.

24. Ms. Harper-Young's job duties consisted of ensuring the safety and security of the inmates assigned to her housing unit. During the relevant time, BOP assigned Ms. Harper-Young to Lee Hall 1.

25. In July 2022, Ms. Harper-Young took on temporary additional duties of Captain's Secretary until the position became permanently filled. These responsibilities included filing paperwork and maintaining the lieutenants' logs. The Captain's office is also located in the Lieutenant's Office within FCC Petersburg.

26. Captain Wright arrived at FCC Petersburg around mid-July 2022. Previously, Captain Wright was Deputy Captain at FCC Butner in North Carolina, where he had worked for almost 20 years.

27. FCC Petersburg intended Captain Wright to assume the position on an earlier date, but his start date had to be pushed back due to Captain Wright's involvement in a domestic altercation in North Carolina. Despite this incident, BOP promoted Captain Wright to Complex Captain for FCC Petersburg.

28. Before July 20, 2022, Ms. Harper-Young had only met Captain Wright once during his tour of Lee Hall. Their initial encounter was brief and cordial.

### *Captain Wright sexually harassed Ms. Harper-Young*

29. On July 20, 2022, around 5:30 P.M., Captain Wright called Ms. Harper-Young and started the conversation by saying, "you left, and I didn't get to a chance to see you before you left for the day." Ms. Wright said that is typical since she is not required to stay past 4:00 P.M. Captain Wright then joked about Ms. Harper-Young going home to cook dinner.

30. Captain Wright asked Ms. Harper-Young about her schedule, specifically her days off. Ms. Harper-Young responded that she was not scheduled to work on Fridays and Saturdays. Captain Wright stated that he had to work the desk on Saturday and that Ms. Harper-Young "should come in and keep [him] company."

31. Ms. Harper-Young answered, again, that she does not work Saturdays and that she had dinner plans. Captain Wright said, "I guess I'll be here by myself." Ms. Harper-Young simply responded in the affirmative.

32. Captain Wright ended the conversation by admonishing Ms. Harper-Young: "Don't drink too much and don't do nothing I wouldn't do."

33. On July 28, 2022, Captain Wright called Ms. Harper-Young to come to his office to find missing staff performance evaluations. Ms. Harper-Young went to his office and located the evaluations successfully. As she gathered her belongings and locked the administrative office to leave for the day, Captain Wright stated, "before you leave, leave me your panties."

34. Ms. Harper-Young immediately objected, shocked at what she had just heard, and walked out of the office.

35. On July 31, 2022, Captain Wright called Ms. Harper-Young to discuss the performance evaluations. He thanked her for locating them. Captain Wright then asked her about her

schedule.

36. At the end of the conversation, Captain Wright asked Ms. Harper-Young, "how come you didn't do what I told you to do." Confused, Ms. Harper-Young asked what he meant by that statement, as they had just discussed her success with locating the evaluations.

37. Captain Wright said, "you didn't leave me your panties like I told you to."

38. Ms. Harper-Young answered, "didn't I tell you to find someone else to play with?" and ended the conversation.

39. On August 3, 2022, Captain Wright called Ms. Harper-Young and asked why "he didn't see [her] the day before?" Ms. Harper-Young responded that she saw that his door was closed and there were no papers, indicating that he did not need help in the captain's office. Captain Wright stated he planned to be back in his office around 1:30 P.M. and to "come over" to the office. Ms. Harper-Young stated that she would be over to file papers and complete any other tasks.

40. Captain Wright continued that he wanted her to come by "cause I'm trying to see you." Ms. Harper-Young responded, asking "see me for what?"

41. Captain Wright stated, "I'm trying to see you naked, that's going to help with my imagination."

### Ms. Harper-Young reported Captain Wright's sexual harassment and BOP retaliated

42. That same day, August 3, 2022, Ms. Harper-Young called Yolanda Blackwell for on the radio. Ms. Blackwell went to Ms. Harper-Young's office. Ms. Blackwell noticed that Ms. Harper-Young appeared "different."

43. Ms. Blackwell asked Ms. Harper-Young if anything was wrong, and Ms. Harper-Young told Ms. Blackwell about Captain Wright's sexual harassment of her. With Ms. Blackwell's

7

help, Ms. Harper-Young then wrote a memorandum to Warden David Leu about Captain Wright's actions.

44. Ms. Harper-Young sent the memo to Warden Leu later that day on August 3, 2022.

45. Ms. Blackwell separately wrote a memo to Warden Leu on August 3, 2022, detailing that she had seen Ms. Harper-Young walk out of Lee Hall with a "disturbed" look on her face and Captain Wright right behind her.

46. Around that same time, another employee, Officer FNU Jones, submitted a memo to Warden Leu detailing an interaction with Captain Wright where he told her suggestively that "I heard good things about you" and that "I see what they were talking about."

47. After receiving the memos, Warden Leu wrote a Referral of Incident report to the Office of Internal Affairs ("OIA") for BOP on August 3, 2022. Warden Leu forwarded the memo to DOJ Office of Inspector General on August 4, 2022. The office transferred the complaint to the Office of Internal Affairs on August 8, 2022, for further investigation. The OIG deferred the matter to the Bureau of Prisons OIA on December 8, 2022. OIA Special Agent Brian Cregan conducted an investigation during the week of March 6, 2023.

48. Shortly after she submitted the memo to Warden Leu, on August 3, 2022, Ms. Harper-Young learned that BOP did not select her for two open positions she previously applied for, Financial Program Specialist and Regional Financial Specialist.

49. Based on her qualifications, Ms. Harper-Young was one of four candidates who met the minimum qualification requirements for the position. Prior to August 3, 2022, two employees, including Captain Wright, rated Complainant above average in all areas: Administrative Skills, Oral Communication, Written Communication, Technical Expertise, Responsiveness, and Analytical Ability. Despite this, BOP did not select her for

either position.

### *BOP investigated the allegations of sexual harassment but took no remedial action.*

50. Based upon the submitted information and memos, Defendant assembled a Threat Assessment Team on August 9, 2022. The team consisted of R. Wilson, Associate Warden; Jesse Turner, Assistant Human Resource Manager; Dr. Byron Williams, Chief of Psychology, Holly Pretesi, Senior CLC Attorney; FCC Butner; and Joseph Allen, Union President (collectively the "team").

51. The team reviewed statements from both Ms. Harper-Young and Ms. Blackwell and concluded that "Officer Harper-Young does not feel safe in the workplace, and this matter warrants further investigation." The team recommended further investigation, a cease-and-desist letter to Captain Wright, reminder of BOP Anti-Harassment Policy, and a letter of referral for Employee Assistance Program to Ms. Harper-Young.

52. The team told Ms. Harper-Young that they would get back to her once they finished their investigation. The team never affirmatively updated Ms. Harper-Young after that.

53. When Ms. Harper-Young asked the team for the conclusion of the investigation, they responded that the results could not be disclosed.

54. Ms. Harper-Young learned that when she reported Captain Wright's conduct to the local union at FCC Petersburg, someone leaked her memo to the union at FCC Butner and gave it to Captain Wright. Captain Wright presented the memo during his threat assessment interview.

55. On September 7, 2022, Richard Heldreth, Mid-Atlantic Region Union Vice President, emailed Colette Peters, James Petrucci, and Beth Reese on Ms. Harper-Young's behalf with the subject line "Pattern of Sexual Harassment by Supervisor."

56. Mr. Heldreth cited in his email that when he went to the facility to speak with Warden Leu, the Warden responded that "he would not remove Captain Wright from his supervisory role during the investigation, because it was not his management style" and that he knew Captain Wright for a long time, and he didn't have "this type of history." Mr. Heldreth advised Warden Leu that he was making a mistake because he should treat any allegation of sexual harassment very seriously.

57. Mr. Heldreth's email further stated that he spoke with union representatives at FCC Butner, where Captain Wright allegedly harassed a female subordinate. He wrote that there was at least one active EEO case pending against Captain Wright. Mr. Heldreth questioned "why Warden Leu chose to mislead [Mr. Heldreth] about Wright's history and protect him" rather than protect a victim.

58. BOP had provided Mr. Heldreth with a domestic violence protection order against Captain Wright from April 2020. He wrote to Warden Leu that under a protection order, Captain Wright automatically lost the right to possess a firearm. Mr. Heldreth further noted that instead of the removal of his right to carry a firearm and restricting Captain Wright's employment at FCC Petersburg, Defendant actually promoted him to Captain. At least one other female employee made similar allegations against Captain Wright during the relevant time period.

59. On September 17, 2022, BOP sent Captain Wright a cease-and-desist letter to stop further sexual harassment of Ms. Harper-Young and formally disclosed the threat assessment.

60. During his threat assessment interview, Captain Wright blamed his comments on Ms. Harper-Young not wearing her uniform properly. However, Lieutenant Amy Coles, FCC Petersburg stated that many staff wore different versions of the dress code because of a

lack of stock supplies.

61. BOP Human Resources refused to move Captain Wright to a station that would have prevented contact with Ms. Harper-Young.

62. BOP Human Resources further denied Ms. Harper-Young's request for paid administrative leave.

63. Although BOP finally relocated Captain Wright's office to the Low Institution, Ms. Harper-Young still had to pass Captain Wright's office to enter or exit her duty location. Thus, Captain Wright was still able to regularly interact with Ms. Harper-Young.

64. From August 3, 2022, to January 2023, Ms. Harper-Young used unpaid leave, performed some collateral duties, and applied for other jobs.

65. In January of 2023, Ms. Harper-Young transferred to a position as Administrative Officer, GS-7, in the Central Office for Labor Relations for BOP, to get away from Captain Wright. This position was a demotion and came with a decrease in pay.

66. The central office is located in Washington, DC, requiring Ms. Harper-Young to drive over two hours, each way, to work multiple times per week.

67. Ms. Harper-Young feared returning to FCC Petersburg, Ms. Harper-Young further does not feel safe at home because Captain Wright has access to her personal information from her personnel file, including her home address. Due to this fear, Ms. Harper-Young sleeps with a gun next to her and takes medication for depression and anxiety.

68. Upon information and belief, Captain Wright retired from federal service but remains the subject of a separate federal court case for sexual harassment.

69. In May 2024, Ms. Harper-Young returned to FCC Petersburg, only after Captain Wright no longer worked at the facility.

## COUNT I

**(**42 U.S.C. § 2000e, et seq. – Discrimination on the basis of Sex**)**

70. Ms. Harper-Young repeats and realleges paragraphs 1–69 as if fully set forth herein.

71. At all times relevant, Plaintiff was Defendant's employee within the meaning of Title VII of the Civil Rights Act of 1964.

72. At all times relevant, Defendant was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964.

73. Plaintiff is a female and thus a member of a protected class under Title VII.

74. Defendant discriminated against Plaintiff when Defendant's employee and agent Captain Wright sexually harassed Ms. Harper Young by: on July 20, 2022, telling Ms. Harper-Young to keep her company while he worked and not to do anything he wouldn't do; on July 28, 2022, saying "before you leave, leave your panties;" on July 31, 2022, admonishing Ms. Harper-Young by saying "you didn't leave me your panties like I told you to;" and on August 3, 2022, telling Ms. Harper-Young "I'm trying to see you naked, it's going to help my imagination."

75. Defendant further discriminated against Plaintiff when Warden Leu, Captain Wright's supervisor, refused to discipline Captain Wright for sexually harassing Ms. Harper-Young or take appropriate remedial action in any way.

76. Defendant further discriminated against Plaintiff when it constructively demoted her by forcing her to take a different, lower-paying position to escape Captain Wright's sexual harassment.

77. By and through its conduct, Defendant violated Title VII.

78. Defendant acted willfully and with malice or reckless indifference to Ms. Harper-Young's

rights.

79. As a result of Defendant's unlawful actions, Ms. Harper-Young has suffered damages including but not limited to lost wages and benefits, compensatory damages, liquidated damages, attorney's fees, and costs.

## COUNT II

**(**42 U.S.C. § 2000e, *et seq*. - Retaliation**)**

80. Plaintiff repeats and realleges paragraphs 1–79, as if fully set forth herein.

81. At all times relevant, Plaintiff was Defendant's employee within the meaning of Title VII of the Civil Rights Act of 1964.

82. At all times relevant, Defendant was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964.

83. Plaintiff engaged in protected activity within the meaning of Title VII when she reported Captain Wright's sexual harassment of her to Warden Leu and Yolanda Blackwell.

84. In response to Plaintiff's protected activity, Defendant took adverse action against Plaintiff when it did not select her for the Financial Program Specialist and Regional Financial Specialist positions which she was qualified for; and constructively demoted her with a pay decrease to a position two hours away from her home.

85. Defendant BOP took this adverse action because of Plaintiff's protected activity. In doing so, Defendant BOP unlawfully retaliated against her in violation of Title VII.

86. Defendant acted willfully and with malice or reckless indifference to Ms. Harper-Young's rights.

87. As a result of Defendant' unlawful actions, Ms. Harper-Young has suffered damages including but not limited to lost wages and benefits, compensatory damages, liquidated

damages, attorney's fees, and costs.

## COUNT III

(42 U.S.C. § 2000e, et seq. – Hostile Work Environment on the basis of Sex)

88. Plaintiff repeats and realleges paragraphs 1–87, above, as if fully set forth herein.

89. At all times relevant, Plaintiff was Defendant's employee within the meaning of Title VII of the Civil Rights Act of 1964.

90. At all times relevant, Defendant was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964.

91. Plaintiff is a female and thus a member of a protected class under Title VII.

92. Defendant subjected Plaintiff to a hostile work environment when its employee and agent Captain Wright continuously sexually harassed Plaintiff, including but not limited to, when: on July 20, 2022, Captain Wright suggestively told Ms. Harper-Young to keep him company while he worked and not to do anything he wouldn't do; on July 28, 2022, Captain Wright said to Plaintiff "before you leave, leave your panties;" on July 31, 2022, Captain Wright exclaimed "you didn't leave me your panties like I told you to;" and on August 3, 2022 Captain Wright stated "I'm trying to see you naked, it's going to help my imagination."

93. Captain Wright's actions were objectively severe and pervasive, altering the terms and conditions of Plaintiff's employment.

94. Defendant knew of Captain Wright's conduct because Plaintiff complained about it and memorialized it in writing directly to Warden Leu, who failed to take prompt and appropriate corrective action to address and remedy the hostile work environment.

95. By and through its conduct, Defendant violated Title VII.

96. Defendant' actions and omissions were intentional, reckless, and malicious.

97. As a result, Plaintiff has suffered damages including lost wages and benefits, compensatory damages, emotional distress, and mental anguish.

## COUNT IV

(42 U.S.C. § 2000e, et seq. – Hostile Work Environment on the basis of Retaliation)

98. Plaintiff repeats and realleges paragraphs 1–97, above, as if fully set forth herein.

99. At all times relevant, Plaintiff was Defendant's employee within the meaning of Title VII of the Civil Rights Act of 1964.

100. At all times relevant, Defendant was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964.

101. Plaintiff engaged in protected activity within the meaning of Title VII when she reported Captain Wright's sexual harassment of her to Warden Leu and Yolanda Blackwell.

102. Defendant subjected Plaintiff to a hostile work environment when its employee and agent Captain Wright continuously engaged in harassment of Plaintiff, including but not limited to, when: Ms. Harper-Young was not selected for the open positions to which she applied (Financial Program Specialist and Regional Financial Specialist); her requests for a reassignment to prevent working with or near Captain Wright was denied; and her request for placement on administrative leave to prevent working with or near Captain Wright were denied.

103. Captain Wright's actions and Warden Leu's actions were objectively severe and pervasive, altering the terms and conditions of Plaintiff's employment.

104. Defendant was aware of Plaintiff's protected activity as Ms. Harper-Young's complaint about the underlying sexual harassment was sent directly to Warden Leu, who failed to

take prompt and appropriate corrective action to address and remedy the hostile work environment.

105. By and through its conduct, Defendant violated Title VII.

106. Defendant' actions and omissions were intentional, reckless, and malicious.

107. As a result, Plaintiff has suffered damages including lost wages and benefits, compensatory damages, emotional distress, and mental anguish.

## JURY TRIAL DEMAND

108. Ms. Harper-Young demands a jury trial on all claims against Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment against the Defendant on all Counts and award Plaintiff retroactive promotion, lost wages and benefits, liquidated damages, compensatory damages, pre- and post-judgment interest, costs, attorneys' fees, and any such other relief as is just and proper.

Date:   July 10, 2025

RESPECTFULLY SUBMITTED,

Alan Lescht and Associates, P.C.

By: /s/ Ari M. Wilkenfeld
Ari Micha Wilkenfeld #461063
1825K Street, N.W., Suite 750
Washington, D.C. 20006
Tel: (202) 463-6036
Fax: (202) 463-6067
Ari.wilkenfeld@leschtlaw.com

*Attorneys for Plaintiff*